C. A. CROSS v. FARMERS ELEVATOR COMPANY OF DAW-
SON, NORTH DAKOTA, a corporation, and G. M. Magee, Wil-
liam Hoeft, Sam Swanson, Frank Eberl, S. E. Kepler, Mrs. S. E.
Kepler, R. M. Bunker, Berndt Nelson, John C. Taylor, E. J.
Raymond, E. L. Bunker, H. K. Grimm, M. W. Naylor, M. H.
Raymond, R. E. Young, and John F. Kepler, as Officers, Directors,
and Stockholders Thereof.

(153 N. W. 279.)

Corporation — promoter of — stock — subscription to — limitation of — court
of equity — one seeking relief in — clean hands — control of corporation
— "dummy" subscribers — for benefit of promoter.

1. He who comes into a court of equity must come with clean hands, and a
promoter of a corporation who has prepared and caused to be circulated a stock
subscription form or contract by which some, at least, of the subscribers to
the capital stock of a corporation, are made to agree not to purchase more
than ten shares of such stock, and who in violation of such form or agreement
has himself, before the capital stock of said corporation has been subscribed
in full, obtained control of said corporation by obtaining an issue of stock
to "dummies," and which stock he has afterwards had assigned to him, cannot
come into a court of equity and complain because the directors of such cor-
poration have taken such control from him by the sale of the balance of the
capital stock of said corporation, even though such sale was for the principal
purpose of depriving him of such control.

Incorporation laws — policy of — capital stock — subscription to.

2. The policy of the incorporation laws of the state of North Dakota is
that the capital stock of a corporation shall be fully subscribed as soon as
possible, and when such capital stock is sold at par, a stockholder has no
ground for complaint, even though the additional money may not be absolutely
necessary to the existence of the corporation.

Capital stock — subscription to — contract as to individual number of shares
— valid as to parties to it.

3. The subscribers to the stock of a corporation may enter into an agree-
ment under the terms of which neither themselves nor subsequent subscribers
to the stock will be entitled to and receive more than the stipulated number
of shares, and this agreement will be binding on the parties to it though
not on the corporation.

Opinion filed June 7, 1915. On petition for rehearing June 15, 1915.

Appeal from the District Court of Kidder County, *Nuessle, J.*,

Action to have canceled and set aside certain shares of the capital stock of a corporation, and to enjoin the directors from selling any more stock, fixing the salaries of the officers, and declaring dividends. Judgment for defendants. Plaintiff appeals.

Affirmed.

Statement of facts by BRUCE, J.

This is an action which is brought by the plaintiff, C. A. Cross, for the purpose of obtaining the control of the defendant elevator company by having canceled and set aside seventy shares of stock which were issued after he had obtained the control of such corporation by the purchase of a majority of its stock before such later issue, and to restrain the board of directors and the board of directors elect from selling any more stock, fixing the salaries of the officers and employees of the corporation, and declaring any dividends. The complaint also asks for an accounting from said directors.

The trial court dismissed the action on the ground that the plaintiff, C. A. Cross, did not come into court with clean hands, and was not entitled to any relief, but should be left in the position in which the court found him. The plaintiff has appealed and a trial *de novo* is demanded.

The findings of fact by the trial court, which, with a few modifications which will appear later in this opinion, we concur in on this trial *de novo,* were as follows: "That the Farmers Elevator Company of Dawson, North Dakota, is a corporation organized in August, 1909, and existing under and by virtue of the laws of the state of North Dakota, with its principal place of business at Dawson, Kidder county, North Dakota; that the purpose and object of said corporation was to build an elevator, buy and sell grain and feed, and to build and operate a feed mill, and afford a better market to the farmers residing in the vicinity of Dawson for the grain raised by them; that, pursuant to such purpose, and to enlist the interest and secure the co-operation of a large number of the residents of that community, the subscribers of stock of said company, at the time of their subscription thereto, entered into and subscribed an agreement in writing which is in words and figures following: 'We, the undersigned, do hereby agree to pur-

chase the number of shares of stock in the Farmers Elevator Company, Dawson, North Dakota, which appears opposite our signatures, and hereby contract with the said company to purchase the stock upon demand. Said stock to be paid for at the rate of fifty ($50) dollars a share. It is further agreed that no stockholders be allowed to own or vote more than ten shares of stock in his own name, and that no stock shall be negotiable or sold to any party without first being offered to the said elevator company at its face value, and that no person, firm, or corporation shall be qualified to purchase or hold stock in said elevator company unless they are bona fide residents of Kidder county, North Dakota.' Which agreement was signed by all the stockholders buying stock during the first year of the corporate existence of such corporation, except said C. A. Cross, who subscribed for one share; that thereafter, when the organization of said corporation was complete, said agreement was incorporated and adopted as one of the by-laws of said company, and ever since its adoption has been and now is in full force and effect as such. 2. That the plaintiff, C. A. Cross, was the principal promoter of said corporation, and was its secretary and one of its directors for the first two years of its existence, and received one hundred ($100) dollars in cash and two shares of the capital stock of said company for his services as such promoter; that said C. A. Cross drew and circulated the agreement set out in finding No. 1 herein, and induced stockholders to sign said agreement and take stock in such corporation upon the strength of said agreement and his representations that such agreement was valid and binding. 3. That the capital stock of said corporation was and is ten thousand ($10,000) dollars, divided into two hundred (200) shares of the par value of fifty ($50) dollars each; that ever since the incorporation of said company its directors endeavored to sell all the stock at par, and the unissued stock of said corporation has at all times since its incorporation been for sale at par to qualified purchasers; that during the first year of its corporate existence one hundred and six (106) shares of the capital stock were sold and issued; that thereafter, in July, 1911, Edgar Bon and E. L. Bunker were appointed a committee by the directors to dispose of the balance of the capital stock, but no more could be sold until the spring of 1913, at which time seventy (70) shares of the un-

issued capital stock of said corporation were sold at par and regularly issued to qualified purchasers, to wit:

| | |
|---|---|
| Sam Swanson | 2 shares |
| G. M. Magee | 2 shares |
| Frank Eberl | 2 shares |
| William Hoeft | 1 share |
| Berndt Nelson | 1 share |
| R. M. Bunker | 2 shares |
| S. E. Kepler | 5 shares |
| Mrs. S. E. Kepler | 5 shares |
| H. K. Grimm | 10 shares |
| M. W. Naylor | 10 shares |
| M. H. Raymond | 10 shares |
| R. E. Young | 10 shares |
| John F. Kepler | 10 shares |

"That forty (40) of such shares were sold before June 7, 1913, annual meeting of the stockholders at which directors were elected, and thirty of such shares were sold after such meeting; that each of the purchasers of said stock paid to the corporation par value therefor, and they are now, and at all times since the purchase of said stock have been, bona fide stockholders of said corporation, and owners of such stock, and entitled to all the rights and benefits of stockholders in corporations of the state of North Dakota; that said stock was issued and sold according to the statutes of the state of North Dakota. 4. That at all times since its organization said corporation, in order to carry on its business, has had to borrow greater or less sums of money, and to pay interest thereon; that at times it has been necessary to have at its command large sums of money, and that the additional capital so secured by said sale of stock could be used to great advantage by the corporation, though not absolutely necessary in order to carry out the purposes of its organization and conduct the business as specified in its articles of incorporation. 5. That after its incorporation in the year 1909, the corporation built a grain elevator on the Northern Pacific right of way at Dawson, North Dakota, at an expense of fifty-seven hundred twenty-five ($5,725.) dollars; that at the time said elevator was completed the company did not have enough money to

pay for same, and was in debt and was dependent upon borrowed capital to conduct its business; that thereafter plans and specifications were prepared for building a feed mill, and estimates therefor received, but on account of lack of money such feed mill has not been built; that the money arising from the sale of stock sold and issued in 1913 is the property of the corporation, and is for the joint benefit of all of the stockholders of such corporation. 6. That said elevator building was erected in the fall of 1909, and opened for business on or about October 1st of that year, and has ever since been and now is used and employed by said corporation in its business of buying and selling grain. That said company has, ever since the opening of said elevator, conducted an ordinary elevator business for profit, by purchasing and selling grain in the open market, and has transacted a large volume of business, and such business has been profitable to said corporation and the stockholders thereof, it having been shown to the court that for the first year's business, embracing the period from the opening of said elevator in the fall of 1909 to June 30th, 1910, adopted by said company as the end of its first fiscal year, a dividend of 22 per cent was earned, and such dividend was the net profit from the conduct of said business for such period, after paying all expenses, charges, and obligations in and about the conduct of said business. And it further appearing to the court that during the next fiscal year, ending on June 30th, 1911, which was a period of poor crops and small business in that locality, the said defendant corporation paid all its obligations, charges, and expenses in full, and, after summing up its business for said period, had a small deficit, to wit, about $27; and it having been further shown that for the next fiscal year, ending June 30th, 1912, the said corporation earned and paid to its stockholders a net dividend on the total capital stock invested, of 10 per cent, after paying all its debts, charges, and expenses of conducting said business; and it further appearing to the court that for the next fiscal year, ending June 30th, 1913, a large net profit was earned by said corporation after deducting all expenses, charges, debts, and obligations of said business, together with a sum equal to 15 per cent of the cost of the elevator as deterioration of the said elevator building; and that there is now a large surplus available for dividends to be paid stockholders, amounting to approximately $2,900. 7. That the plaintiff, C. A.

Cross, knew that unissued stock was for sale at par at all times, and has not at any time expressed his intention or desire to purchase any of the unissued stock of such corporation, or demanded or offered to pay for any part thereof; that the said Cross had due opportunity to purchase such unissued stock, but refused so to do. 8. That at the stockholders' meeting of said corporation held in July, 1912, a resolution was introduced, passed, and adopted, to the effect that four of the seven directors elected at that meeting should hold office and serve for a term of two years, and three for a term of one year, and that the board of directors should designate which members should serve for two years and which members for one year; that the board of directors thereafter at their meeting held on January 30, 1913, designated George Magee, William Hoeft, Frank Eberl, and Sam Swanson as directors to hold office for a term of two years, and John C. Taylor, Henry Albreacht, and R. A. Haase as directors to hold office for a term of one year; but through the neglect and oversight of the secretary of such meeting no record was made of such resolution. That a meeting of the stockholders was held June 7, 1913, which was the regular annual meeting of the stockholders of such corporation, lawfully and properly called; that C. A. Cross participated in such meeting, and was afforded an opportunity to vote on each and every ballot held, and voted upon some of such ballots; that at such annual meeting of the stockholders the following resolution was unanimously adopted: 'No. 7. Whereas, to the best knowledge and belief of the majority of the stockholders of this company, a certain resolution was adopted at the regular annual meeting of the stockholders on July 3, 1912, which provided for four of the seven directors to be elected for a term of two years, and three for a term of one year, and provided that the board of directors should designate which members should serve for two years and which members for one year; and whereas, the secretary then acting failed to enter such action of the stockholders in the minutes of the meeting; and whereas, the directors all at this meeting on July 6th, 1912, carried out a portion of said instruction by providing that four of the directors were elected for two years and three for one year, and did at their meeting on January 30th, 1913, carry out the full instruction of the stockholders at their meeting on July 3, 1912, by the passage of a former by-law providing that four of the seven directors should hold

office for a term of two years, and three for a term of one year, and designating George Magee, William Hoeft, Frank Eberl, and Sam Swanson as directors to hold for a term of two years, and John C. Taylor, Henry Albreacht, and R. A. Haase directors to hold for a term of one year. Now, therefore, be it resolved by the stockholders of this company that the said action of said stockholders as directed at their respective meetings on July 3 and July 6, 1912, and of the said directors on January 30, 1913, as hereinbefore set forth, be and the same hereby is in all respects approved, ratified, and confirmed, and is hereby adopted as the action of this assembly.' That at such stock-holders' meeting the president announced that three directors were to be elected, and E. L. Bunker, S. E. Kepler, and E. J. Raymond received a majority of the votes cast, and were declared elected as directors for the year beginning July 7, 1913. 9. That the plaintiff, C. A. Cross, in order to secure control of this corporation, during the winter and spring of 1912 and 1913, with full knowledge of the agreement among the stockholders and by-law of said corporation set out in finding No. 1 herein, and with the intent and purpose to avoid the force and effect of such agreement and by-law, bought and owns fifty-three (53) shares of the capital stock of said corporation, being a majority of the stock then issued, and placed them in the names of his children and friends. 10. That the purchasers of said seventy shares of stock sold in the year 1913, as found and set out in finding No. 3 hereof, purchased the same in order that they, and those of the stockholders of said corpora-tion who were friendly to them, might retain control of the corpora-tion, and in order to prevent the plaintiff, Cross, from securing control thereof; and that the said corporation and the officers and directors thereof knew the motive and reason for such purchase by said purchasers at the time of the sale and issuance of said stock to them."

*W. P. Costello* and *Miller & Zuger,* for appellant.

In corporate or popular government one person or one set of persons, because they believe their policy right, and another policy dangerous, cannot rightfully invade the field of the suffrage upon which such policy rests, and disfranchise, in whole or in part, those who disagree with them. Luther v. C. J. Luther Co. 118 Wis. 112, 99 Am. St. Rep. 977, 94 N. W. 69.

The power to enact by-laws restraining the sale and transfer of stock must be found in the governing statute or the charter. Such restrictions must have their source in legislative enactment, as the corporation itself cannot create such impediment. 4 Thomp. Corp. pp. 4137, and cases cited, 4138; Ireland v. Globe Mill. & Reduction Co. 20 R. I. 190, 38 L.R.A. 299, 38 Atl. 116; 1 Cook, Stockholders & Corp. Law, §§ 331 and 332; Morgan v. Struthers, 131 U. S. 246, 33 L. ed. 132, 9 Sup. Ct. Rep. 726; Feckheimer v. National Exch. Bank, 79 Va. 80; Re Klaus, 67 Wis. 401, 29 N. W. 582; Rev. Codes 1905, § 4194, Comp. Laws, 1913, § 4527.

"He who comes into a court of equity must come with clean hands." This maxim is confined to his conduct in the matter before the court, and not to matters *aliunde*. Because his conduct in other matters not before the court may not be blameless is no reason why he should be denied redress in the matter directly before the court. It is sufficient if the suitor shows that he has acted justly, fairly, and legally in the subject-matter of the suit. 1 Pom. Eq. Jur. p. 339; Equitable Gaslight Co. v. Baltimore Coal Tar & Mfg. Co. 65 Md. 85, 3 Atl. 108.

Directors of a corporation occupy a fiduciary relation to the stockholders, and are treated by the courts as trustees for the stockholders. 10 Cyc. 787 and cases cited; Elliott v. Baker, 194 Mass. 518, 80 N. E. 450; Miner v. Belle Isle Ice Co. 93 Mich. 397, 17 L.R.A. 412, 53 N. W. 218; Luther v. C. J. Luther Co. supra.

Where there is a contest for control, and the directors sell and issue a large number of shares of treasury stock of the company to a person on their side of the controversy, and thus gain control of the corporation, where the same was in no sense necessary for the proper management of the corporation, but expressly for the purpose of gaining control, the certificates so issued will be canceled. Elliott v. Baker, 194 Mass. 518, 80 N. E. 450; 10 Cyc. 543; Humboldt Driving Park Asso. v. Stevens, 34 Neb. 528, 33 Am. St. Rep. 654, 52 N. W. 568; Miner v. Belle Isle Ice Co. 93 Mich. 397, 17 L.R.A. 412, 53 N. W. 218; Jones v. Morrison, 31 Minn. 140, 16 N. W. 854.

Where the question of the legality of the election of the board of directors of a corporation is incidental to the relief demanded by the plaintiff, the court has the right to review such election and to determine its validity. 2 Spelling, Priv. Corp. § 606; Re Argus Printing Co.

1 N. D. 434, 12 L.R.A. 781, 26 Am. St. Rep. 639, 48 N. W. 347; Schmidt v. Pritchard, 135 Iowa, 240, 112 N. W. 801; 26 Am. & Eng. Enc. Law, 978.

*R. L. Phelps* and *Newton, Dullam, & Young,* for respondents.

A stockholder may make a contract with the corporation to do, or not to do, certain things in regard to stock, or may waive certain rights, or submit to certain restrictions respecting which the stockholders might have no power or compulsion over him. New England Trust Co. v. Abbott, 162 Mass. 148, 27 L.R.A. 271, 38 N. E. 432; Adley v. Whitstable Co. 17 Ves. Jr. 322, 11 Revised Rep. 87.

What may well be made the subject of a contract between the different interests of a partnership would not be good as a by-law of a corporation. A by-law limiting the number of shares one might buy is invalid as such; it, however, constituted a contract among the members. New England Trust Co. v. Abbott, supra; Seattle Trust Co. v. Pitner, 18 Wash. 401, 51 Pac. 1048; Cratty v. Peoria Law Library Asso. 219 Ill. 523, 76 N. E. 707; Thomp. Corp. §§ 980, 3523; John C. Grafflin Co. v. Woodside, 87 Md. 146, 39 Atl. 413; Hladovec v. Paul, 222 Ill. 254, 78 N. E. 619.

A party who accepts and acts upon an agreement is bound thereby without signing it. Vogel v. Pekoc, 157 Ill. 339, 30 L.R.A. 491, 42 N. E. 386; Griffin v. Bristle, 39 Minn. 456, 40 N. W. 523; McDermott v. Mahoney, 139 Iowa, 292, 115 N. W. 32, 116 N. W. 788; McFadden v. Los Angeles County, 74 Cal. 571, 16 Pac. 397; Austin v. Searing, 69 Am. Dec. 665 and note, 16 N. Y. 112; Thomp. Corp. § 1054.

A court of equity will leave such a party to his remedy at law. Michigan Pipe Co. v. Fremont Ditch, Pipe Line & Reservoir Co. 49 C. C. A. 324, 111 Fed. 287.

Consistency requires that a defendant should not be punished in such cases for doing that which the complainant does with perfect impunity. Thus, an author who has pirated a large part of his work from others is not entitled to have his copyright protected. Edward Thompson Co. v. American Law Book Co. 62 L.R.A. 607, 59 C. C. A. 148, 122 Fed. 922.

An exclusive privilege for deceiving the public is not one that a court of equity can be required to aid. Fetridge v. Wells, 4 Abb. Pr.

144; Manhattan Medicine Co. v. Wood, 108 U. S. 218, 27 L. ed. 706, 2 Sup. Ct. Rep. 436.

Chancery deals only with conscionable claims and demands. Scranton Electric Light & Heat Co's Appeal, 122 Pa. 154, 1 L.R.A. 285, 9 Am. St. Rep. 79, 15 Atl. 446.

The statute making it the duty of the defendants to issue stock to the full amount of the fixed capital of the company, their motives are not the subject of judicial inquiry under the disclosed facts. State ex rel. Page v. Smith, 48 Vt. 266; Rural Homestead Co. v. Wildes, 54 N. J. Eq. 668, 35 Atl. 896.

An old stockholder has no right to subscribe for the untaken stock superior to one who owns no stock. Curry v. Scott, 54 Pa. 270.

Where an old stockholder has the right to stock of a new issue in proportion to the number of shares of old stock owned by him, he must, as a prerequisite to relief, offer to take what he claims as his *pro rata* share of the new stock. Gray v. Portland Bank, 3 Mass. 364, 3 Am. Dec. 156; Stokes v. Continental Trust Co. 186 N. Y. 285, 9 Ann. Cas. 738, 78 N. E. 1090, 12 L.R.A.(N.S.) 969.

To entitle a stockholder to maintain an action for damages for refusal to allow him to subscribe for new shares, he must allege and prove that he offered to subscribe and pay for them in the regular way within the time fixed for such subscription. Bonnet v. First Nat. Bank, 24 Tex. Civ. App. 613, 60 S. W. 325; Wilson v. Montgomery County Bank, 29 Pa. 537; Crosby v. Stratton, 17 Colo. App. 212, 68 Pac. 130.

Appellant has waived his right to a *pro rata* proportion of the stock. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854; Crosby v. Stratton, 17 Colo. App. 212, 68 Pac. 130; Bonnet v. First Nat. Bank, 24 Tex. Civ. App. 613, 60 S. W. 325; Hoyt v. Shenango Valley Steel Co. 207 Pa. 208, 56 Atl. 422; Thomp. Corp. § 3645; Stokes v. Continental Trust Co. and Curry v. Scott, supra.

He is estopped to complain of irregularities in the election of officers. Thomp. Corp. §§ 921, 935; People ex rel. Swan v. Loomis, 8 Wend. 396, 24 Am. Dec. 33; State ex rel. Martin v. Thompson, 27 Mo. 365; Philips v. Wickham, 1 Paige, 590; Re Argus Printing Co. 1 N. D. 434, 12 L.R.A. 787, 26 Am. St. Rep. 639, 48 N. W. 347.

BRUCE, J. (after stating the facts as above). It is difficult for us to find in the voluminous record which is before us or in the brief of counsel any ground whatever on which the plaintiff can seek equitable relief. He seeks the control of the corporation, and complains that stock has been sold since he obtained the majority thereof, and that the purpose of this sale was to take the control from him, when as a matter of fact the only purpose for which he acquired the stock which he did, and which he admits was acquired through "dummies" and in violation of the agreement between the stockholders that no person should acquire more than ten shares, was in order that he himself might get that control. The evidence is clear that the stock of the corporation has at all times been for sale, and that quite recently and before the sale of the seventy shares which plaintiff now seeks to set aside, he himself had the opportunity of buying fifty of these shares and thus of gaining a permanent control. His proposition, however, is that if the motive of the directors of a corporation in selling the balance of the unsold capital stock, or in taking subscriptions thereto, is to take the control from one who holds the majority of the shares before such sale, such sale is fraudulent and may be set aside, even though such stock is sold at par and the money therefor is collected. This proposition is to us a novel one and has no support whatever in principle or in the authorities. Section 4525, Compiled Laws, of 1913 provides that, "after the secretary of state issues the certificates of incorporation as provided in § 4512, the directors named in the articles of incorporation *must proceed* in the manner specified . . . in their by-laws or if none, then in such manner as they may by order adopt, to open books of subscription to the capital stock then unsubscribed, and to secure subscriptions to the full amount of the fixed capital; and to levy and collect assessments thereon in the manner provided by article 10 of this chapter."

The only understanding that we can derive from this section is that it was the intention of the legislature that the stock of private corporations, even if not to be looked upon as a trust fund, so that the same might not be depleted by dividends after once having been collected (see discussion in 4 Thompson on Corporations, 2d ed. §§ 3415, et seq. On this question we are not here required to pass), should be fully subscribed for as soon as possible, and this not merely for the protec-

tion of the public, who, when it is dealing with a $10,000 or a $50,000 corporation, has the right to deal with one which is not on paper merely, but for the protection of the subscribers to the stock, who have the right to believe that they are subscribing for stock in a corporation which will have funds, or at any rate have subscribers who can be held for the amount which will be sufficient for fully developing the purpose and business of the institution. "The stockholders, too," says the supreme court of Wisconsin, in Adler v. Milwaukee Patent Brick Mfg. Co. 13 Wis. 57, "being in general free from personal responsibility, the capital stock constitutes the sole fund to which creditors look for the liquidation of their demands. It is the basis of the credit which is extended to the corporation by the public, and a substitute for the individual liability which exists in other cases. So far as the creditors are concerned it is regarded in the law as a trust fund pledged for the payment of the debts of the corporation." And how can stock which is not subscribed for, and which in cases of insolvency or approaching insolvency would never be subscribed for, be any protection to the creditors of a corporation or to the stockholders who have already subscribed, and who have rights which should be protected. It is to be remembered that in the case at bar we are not dealing with treasury stock which has been bought in or otherwise acquired by the corporation, but with the unsubscribed balance of the capital stock, which § 4525, Compiled Laws of 1913, says the directors *must* endeavor to have subscribed to the full amount, and which constitutes the only asset with which a corporation comes into the world. It is clear to us that no stockholder should be allowed to complain because the directors have done their duty and have not merely obtained subscriptions for, but have obtained the payment in full and at par for, the balance of the stock which the public and the other stockholders had the right to believe the corporation would have subscribed.

It may be, and on this question we are not required to pass, that the stockholders of a corporation have a preference in regard to subscriptions to the treasury stock, but we as yet know of no case which has held that one who has purchased a majority of the stock of a corporation at a time before the stock has been fully subscribed has a vested interest in the control of the corporation so that the remaining stock may not be sold and subscribed for, nor can we see any reason

for such a holding. The evidence, it is true, shows that the sale of such stock was not absolutely necessary to the existence of the corporation. It is quite clear, however, that with the increased money the business could be greatly enlarged, and more economically conducted. Even if it would not, the public and the stockholders had a right to have the stock subscribed.

Not only is this true, but the plaintiff is hardly in the position to come into a court of equity and complain of his loss of the control of the corporation. It is clear from the record that he was the original promoter of the enterprise, and that as such he drew an agreement and a contract of subscription in which it was provided that no stockholder should hold more than ten shares. The purpose of this agreement was that the elevator could be in fact, as well as in name, a farmers' elevator, and that the farmers of the community might be generally interested and benefited thereby. It is clear that, even though he may not have signed this agreement himself, a number of the subscriptions were taken on it with his knowledge and acquiescence. It is also shown that this agreement was later embraced in the by-laws of the company, and we find no objection in the record made by the plaintiff to the adoption of this by-law. It is also clear from the testimony that, though plaintiff may have had some doubt of the validity of the by-law, he was so far controlled thereby that he obtained the subscriptions to the shares of stock which gave him his majority in the names of his family and his friends for the purpose of evading the same. He now comes into a court of equity and asks relief because the officers of the corporation at one time refused to transfer on the books of the corporation the assignments of these "dummies" to him, though in spite of this fact he was allowed to vote the shares of stock at the meetings of this corporation. It is unnecessary for us to say whether the by-law was valid or not. It is sufficient to say that "the subscribers to the stock of a corporation may enter into an agreement under the terms of which neither themselves nor subsequent subscribers to the stock will be entitled to and receive more than the stipulated number of shares, and this agreement will be binding upon the parties to it, though not on the corporation. 4 Thomp. Corp. 2d ed. § 3523; Hladovec v. Paul, 222 Ill. 254, 78 N. E. 619. A plaintiff who has violated this agreement, and thus obtained the control of a corporation,

cannot come into a court of equity and complain because others have obtained control of the corporation, and this not by evading the agreement, but by doing that which the law contemplates.

There is, too, no merit in the proposition that, on account of the prosperous condition of the corporation and some accumulated earnings, the stock was worth more than par, and that a fraud was committed on the plaintiff by the sale at par. We are here, it is to be remembered, not dealing with treasury stock, but with the original unsubscribed capital stock, the value of which was fixed by the articles of incorporation. The record of the corporation in the past has shown that it has not been a wise thing to dissipate all of its earnings in dividends, and though the plaintiff complains that the directors are about to declare dividends and to apportion the same on the new stock, as well as on the old, there is absolutely no proof in the record of this fact. Whether the new stock would share in the past profits it is not necessary for us to determine. It is shown, indeed, that during the second year of the existence of the corporation accumulated profits of 7 per cent were entirely swept away by a failure of crops. The record shows also that no provision has been made for deterioration. It also shows that a feed mill is a part of the scheme of the corporation and reasonably necessary. It further shows that running capital is necessary in order to save borrowing money, and to be able to take advantage of the exigencies of the market.

Plaintiff's sole and only ground of complaint when reduced to its essentials is that he has lost the control of the corporation by the officers of the corporation doing that which the statute contemplates that they should do,—that is, by obtaining subscriptions to all of the shares of capital stock, when he himself at no time would have had that control if he had not violated his agreement with the other stockholders. The record shows no mismanagement or business inability on the part of the directors. There is no pretense that any of the other stockholders own or control more than ten shares. We agree thoroughly with the finding of the trial court that he does not come into equity with clean hands, and that he is not entitled to any relief herein, but should be left in the position in which the court finds him.

31 N. D.—9.

The above considerations, we think, are the only ones that are material in this case, though other questions are involved.

The judgment of the District Court is affirmed.

## On Petition for Rehearing.

BRUCE, J.   Our attention is called in the petition for a rehearing, to the decision in the case of Luther v. C. J. Luther Co. 118 Wis. 112, 99 Am. St. Rep. 977, 94 N. W. 69, which although referred to in the main brief, is claimed to have been overlooked by us.   In that case, however, although relief was granted to the plaintiff and his co-complainants, it was granted wholly on account of the co-complainants, and not on account of the plaintiff.   The court in the opinion expressly said: "Were Clarence J. Luther the sole plaintiff, we should have little doubt that he ought to be dismissed from a court of equity without relief, for the reason that his own conduct has been so in outrage of his duties as a director and officer of the corporation that no court can patiently listen to his prayer for enforcement of fiduciary principles and duties. That objection does not, however, exist to some of the other plaintiffs who, as stockholders, ask that their rights be protected as to them."

In the case at bar, C. A. Cross is the sole plaintiff.   No other creditors or stockholders complain.   He does not come into equity, therefore, with clean hands, and even the decision of Luther v. C. J. Luther Co. would deny him relief.

The petition for a rehearing is denied.