2017 ND 254

**Joan Marie HALLIN and John P. Hallin, and Susan Kay Bradford, Plaintiffs and Appellants**

v.

**INLAND OIL & GAS CORPORATION, Defendant and Appellee**

No. 20170145

Supreme Court of North Dakota.

Filed 10/17/2017

Kerry J. Carpenter, Bismarck, ND, for plaintiffs and appellants.

Wade C. Mann, Bismarck, ND, for defendant and appellee.

Jensen, Justice.

[¶ 1] Joan Hallin, John Hallin and Susan Bradford (collectively Hallin and Bradford) appeal from a judgment in favor of Inland Oil & Gas Corporation. The district court interpreted oil and gas leases and concluded they were unambiguous and transferred all of Hallin and Bradford's mineral interests at issue to Inland. We affirm.

I

[¶ 2] In 2007, Hallin and Bradford each leased to Inland mineral interests they owned in 160 acres of land in Mountrail County. The leases provided Hallin and Bradford leased to Inland "all that certain tract of land situated in Mountrail County."

[¶ 3] Hallin and Bradford, along with members of their extended family, owned a fraction of the minerals in the entire 160 acres. On the basis of irregularities in the chain of title, it was unclear whether Hal-lin and Bradford collectively owned sixty net mineral acres or eighty net mineral acres when the parties executed the leases. Hallin and Bradford believed they owned sixty net mineral acres and their relatives owned sixty acres. When Hallin and Bradford executed the leases, they also received payment drafts for a rental bonus showing they each leased thirty acres to Inland. The leases provide royalty compensation based upon the number of net mineral acres.

[¶ 4] In 2011, Hallin and Bradford sued to determine the mineral ownership between themselves and their relatives. In *Hallin v. Lyngstad*, 2013 ND 168, ¶ 19, 837 N.W.2d 888, this Court decided Hallin and Bradford collectively owned eighty net mineral acres and their relatives owned forty net mineral acres.

[¶ 5] Inland and Hallin and Bradford disagreed whether the leases covered all of Hallin and Bradford's mineral interests. Hallin and Bradford sued Inland, arguing they leased sixty acres and the remaining twenty acres were not leased. Inland argued Hallin and Bradford leased eighty acres because the leases cover all of their mineral interests. Both parties moved for summary judgment. Hallin and Bradford argued an earlier case, *Borth v. Gulf Oil Exploration and Prod. Co.*, 313 N.W.2d 706 (N.D. 1981), was factually similar and should control. They also argued the leases and the payment drafts should be read together to show they each leased thirty net mineral acres. Inland argued the leases were unambiguous and cover all of Hallin and Bradford's mineral interests. The district court granted summary judgment to Inland, concluding the leases were unambiguous and that "as a matter of law, the Hallins and Bradford leased to Inland whatever interest they had in the subject property at the time the leases were executed."

## II

[¶ 6] The standard of review for a district court's grant of summary judgment is well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 6, 892 N.W.2d 193 (quoting *Markgraf v. Welker*, 2015 ND 303, ¶ 10, 873 N.W.2d 26). "Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts." *Markgraf*, at ¶ 10 (quoting *Northern Oil & Gas, Inc. v. Creighton*, 2013 ND 73, ¶ 11, 830 N.W.2d 556).

[¶ 7] Hallin and Bradford argue the district court erred in granting summary judgment to Inland. They argue the court erred by misapplying the precedent in *Nichols v. Goughnour*, 2012 ND 178, 820 N.W.2d 740, by failing to consider the payment drafts issued to Hallin and Bradford at the time the leases were executed to show they leased sixty mineral acres to Inland.

[¶ 8] Assignments and deeds are interpreted in the same manner as contracts. *THR Minerals*, 2017 ND 78, ¶ 8, 892 N.W.2d 193. The same rules of contract interpretation apply to leases. *Irish Oil and Gas, Inc. v. Riemer*, 2011 ND 22, ¶ 11, 794 N.W.2d 715. The primary purpose in interpreting contracts, deeds, and leases is to ascertain and effectuate the parties' or grantor's intent. *See THR Minerals*, at ¶ 8 (citing *Sargent Cty. Water Res. Dist. v. Mathews*, 2015 ND 277, ¶ 6, 871 N.W.2d 608; *Golden v. SM Energy Co.*, 2013 ND 17, ¶ 11, 826 N.W.2d 610; N.D.C.C. § 9-07-03). Grants of property, including grants within leases, are interpreted in a manner consistent with the interpretation of contracts. *Lario Oil & Gas Co. v. EOG Res., Inc.*, 2013 ND 98, ¶ 11, 832 N.W.2d 49.

[¶ 9] Contract interpretation is governed by N.D.C.C. ch. 9-07. The parties' intent is ascertained from the writing alone if possible. N.D.C.C. § 9-07-04. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. "When the parties' intent can be determined from the contract language alone, interpretation of a contract presents a question of law." *THR Minerals*, 2017 ND 78, ¶ 8, 892 N.W.2d 193 (quoting *Border Res., LLC v. Irish Oil & Gas, Inc.*, 2015 ND 238, ¶ 15, 869 N.W.2d 758). When an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent. *Golden*, 2013 ND 17, ¶ 11, 826 N.W.2d 610. When a

contract's language is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is not admissible to alter, vary, explain, or change the contract. *Nichols*, 2012 ND 178, ¶ 12, 820 N.W.2d 740. If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the contract terms and parties' intent become questions of fact. *Border Res.*, at ¶ 15.

[¶ 10] In *Nichols*, nine siblings each owned an undivided 1/9 interest in the surface and an undivided 1/18 interest in the minerals in 640 acres of land in Mountrail County. 2012 ND 178, ¶ 2, 820 N.W.2d 740. Eight of the siblings each executed warranty deeds to the ninth sibling conveying their surface interest. *Id.* Each deed also reserved twenty-five percent of the minerals. *Id.*

[¶ 11] A dispute arose between the nine siblings' successors in interest and a quiet title action ensued. *Nichols*, 2012 ND 178, ¶ 6, 820 N.W.2d 740. The successors to the eight siblings (Goughnour) argued the eight deeds were part of a single transaction with the intent to equally divide the family's one-half mineral interest so the eight siblings would collectively own 1/4 of the minerals and the ninth sibling would own the other 1/4. *Id.* They also presented extrinsic evidence showing that was the parties' intent. *Id.* The successors to the ninth sibling (Nichols) argued the eight deeds were not part of a single transaction. *Id.* at ¶ 11. They argued each deed was unambiguous and the eight siblings each reserved only 1/4 of their 1/18 interest. *Id.* The district court concluded the eight separate deeds were not ambiguous and could not be considered as part of a single transaction. *Id.* at ¶ 7. The court concluded the separate deeds were unambiguous and each deed reserved 1/4 of the 1/18 mineral interest that each sibling owned. *Id.* The

court decided Nichols owned 7/18 of the mineral interests and Goughnour collectively owned 1/9 of the mineral interests. *Id.*

[¶ 12] On appeal, this Court recognized that contracts may be read and construed together:

Instruments that have been executed at the same time, by the same parties, in the course of the same transaction, and concerning the same subject matter, may be read and construed together. *Trengen v. Mongeon*, 206 N.W.2d 284, 286 (N.D. 1973).... Under N.D.C.C. § 9-07-07, "[s]everal contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together." In *First Nat'l Bank v. Flath*, 10 N.D. 281, 287, 86 N.W. 867, 870 (1901), this Court interpreted that language and stated the requirement that several contracts are to be "taken together" does not mean they are to be joined into a single contract. This Court said that language means the contracts "are to be taken together" for the purpose of interpreting either the transaction to which they relate, or the several contracts themselves. *Id.* This Court explained the statute does not purport to destroy the separate identity of the several contracts and does not unite two or more contracts relating to a transaction into a single contract. *Id.*

*Nichols*, 2012 ND 178, ¶ 13, 820 N.W.2d 740. We nevertheless declined to apply this rule of interpretation and concluded the eight separate warranty deeds were unambiguous and could not be read together as part of a single contract or one transaction. *Id.* at ¶ 14. Each deed was clear and unambiguous, and extrinsic evidence was not admissible to alter, vary, explain, or change the deeds. *Id.* "The plain language of each deed conveyed the grantor's undivided 1/9 interest in the land and excepted

and reserved a ¼ interest in all minerals under the land." *Id.*

[¶ 13] Here, the district court concluded Hallin and Bradford's oil and gas leases were unambiguous. The court held "as a matter of law, the Hallins and Bradford leased to Inland whatever interest they had in the subject property at the time the leases were executed." We agree.

[¶ 14] At the heart of Hallin and Bradford's argument is the assertion that the rules of contract interpretation and this Court's discussion in *Nichols* allow the consideration of the payment drafts accompanying the executed leases to show the parties' intent regarding the number of acres leased. The operative language of Hallin and Bradford's leases is identical with regard to the number of acres and reads as follows:

> That the Lessor, ... has granted, demised, leased and let, ... exclusively unto the said Lessee [Inland], the land hereinafter described, with the exclusive right for the purpose of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil and all gas of whatever nature or kind, ... all that certain tract of land situated in Mountrail County, State of North Dakota, described as follows, to-wit:
>
> Township 153 North, Range 92 West
> Section 14: S ½ SW ¼
> Section 23: N ½ NW ¼
> and containing 160.00 acres, more or less.

[¶ 15] The leases specifically provide that they include "all that certain tract of land" within the entire 160–acre parcel. Nothing within the four corners of the leases suggests Hallin and Bradford leased something other than all of the net mineral acres they owned. The term "all" is not ambiguous and it is unnecessary to go beyond the leases to discern the parties' intent. Hallin and Bradford have provided extrinsic evidence in the form of payment drafts purporting to show the parties' intent relating to the number of acres leased; however, because the leases are clear and unambiguous, that evidence is inadmissible to explain the leases. *See Nichols*, 2012 ND 178, ¶ 14, 820 N.W.2d 740 (concluding extrinsic evidence was not admissible to alter, vary, explain, or change the clear and unambiguous deeds). We conclude the district court correctly applied the rules of contract interpretation and did not misapply *Nichols*.

[¶ 16] Hallin and Bradford argue the phrase "160.00 acres, more or less" as used in the leases is ambiguous as to the number of acres mutually intended to be leased. Hallin and Bradford did not raise this argument to the district court. Arguments not made to the district court will not be considered on appeal. *Fahey v. Fife*, 2017 ND 200, ¶ 11, 900 N.W.2d 250. Although Hallin and Bradford did not argue ambiguity to the district court, a similar argument relating to the phrase "more or less" has been addressed by this Court in *Lario*, 2013 ND 98, 832 N.W.2d 49, and *Hild v. Johnson*, 2006 ND 217, 723 N.W.2d 389:

> As in *Hild*, the leases here contain a specific legal description of the land leased. Although *Hild* interpreted a deed and not a lease, we interpret grants of property "in like manner with contracts." N.D.C.C. § 47–09–11. Therefore, the same reasoning applies to our interpretation of the lease. The designated acreage in an otherwise unambiguous lease is irrelevant in light of the specific description. *Hild*, 2006 ND 217, ¶ 13, 723 N.W.2d 389. The lessors transferred to EOG their mineral rights in their respective interests in Lot 3 of Section 30 and Lots 2 and 3 of Section 31, including

the "wet acres," notwithstanding the acreage designation.

*Lario*, at ¶ 11. "A statement in a deed of the quantity of land conveyed may be considered only if all other elements of description in the deed are ambiguous or uncertain." *Hild*, at ¶ 16. "When a deed purports to convey a specific tract of land with a designation that it contains a given number of acres 'more or less,' the deed will be construed to convey the entire tract." *Id.* at ¶ 14.

[¶ 17] Based on our review of the leases to Inland, we conclude that, as in *Lario*, the language of the leases is unambiguous, and Hallin and Bradford leased to Inland all their mineral rights in their respective interests in the S ½ SW ¼ of Section 14 and the N ½ NW ¼ of Section 23, Township 153 North, Range 92 West, notwithstanding the acreage designation.

### III

[¶ 18] Hallin and Bradford argue this case is factually identical to *Borth*, 313 N.W.2d 706. They argue *Borth* requires a decision in their favor.

[¶ 19] In *Borth*, the owners of eighty mineral acres executed a lease with an "unless" clause which provided for the termination of the lease unless the lessee paid a delayed rental. 313 N.W.2d at 708–09. The lease terminated automatically if the delayed rental payments were deficient in either time or amount. *Id.* at 709. After reviewing a title memorandum, the lessee believed the lessors only owned sixty mineral acres. *Id.* at 708. The lessee made timely delayed rental payments for sixty acres for the next several years. *Id.* The lessors accepted the payments but had doubts as to whether they owned sixty or eighty mineral acres. *Id.* After determining they owned eighty acres, the lessors sued to cancel the entire lease under the "unless" clause, arguing failure of consid-

eration and underpayment of delayed rentals. *Id.* at 708–09. The district court tried the case, made findings of fact and conclusions of law, and entered judgment terminating the lease as to twenty mineral acres and leaving the lease valid as to the remaining sixty mineral acres. *Id.* at 709. The lessee appealed, asserting the lease was valid as to the entire eighty acres and the lessors cross-appealed, contending the entire lease should have been terminated. *Id.*

[¶ 20] This Court recognized that the dispute developed because the parties had failed to fully and accurately check the record title to resolve any inconsistencies and the lessee's failure to object to insufficient payment. *Borth*, 313 N.W.2d at 711. Our holding in *Borth* noted the following:

[W]e believe that each of the parties in the instant action were chargeable to some degree with the failure to properly ascertain the correct number of acres involved in the lease. The varying degrees of responsibility attributable to each of the parties to this action suggests two equitable maxims which we believe are applicable to the factual situation presented to us. The first equitable maxim is found at NDCC § 31–11–05(8) and provides as follows: "No one can take advantage of his own wrong." The second maxim is the long-standing "clean hands" doctrine that he who comes into equity must come with "clean hands." *Cross v. Farmers' Elevator Co.*, 31 N.D. 116, 153 N.W. 279 (1915). We believe the proper application of these principles necessitates that the doctrines of estoppel, laches, or mutual mistake are not available as equitable considerations to validate the entire 80–acre mineral lease. Further, because of the acceptance by the Borths of partial payment of the mineral lease, we believe that termination of the entire lease is not warranted.

*Id.* This Court concluded the district court properly terminated the lease as to twenty acres and properly validated the lease as to the sixty acres paid for by the lessee. *Id.* at 712.

[¶ 21] *Borth* is distinguishable from this case. In *Borth*, there were no title inconsistencies when the lease was executed and the lessors' exact mineral acreage could be determined from a review of the abstract or record title. The parties' failure to correctly ascertain the acreage in a lease containing an "unless" clause, along with the lessor's acceptance of partial delayed rental payments, supported an application of equitable relief in *Borth*. That situation is not present here. Rather, title inconsistencies present when the leases were executed resulted in a quiet title action in which Hallin and Bradford were declared to be the owners of eighty net mineral acres after executing the leases. Notwithstanding those title inconsistencies, Hallin and Bradford executed unambiguous leases conveying all of their mineral interests to Inland. We conclude *Borth* does not apply here.

## IV

[¶ 22] We have considered the parties' remaining arguments and conclude they are either without merit or not necessary to our decision. The judgment concluding Hallin and Bradford leased all of their mineral interests to Inland is affirmed.

[¶ 23] Jon J. Jensen

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Gerald W. VandeWalle, C.J.