2013 ND 98

**LARIO OIL & GAS COMPANY, a foreign corporation, Gene F. Lang & Co., a foreign corporation, Plaintiffs**

**Lario Oil & Gas Company, a foreign corporation, Appellee**

**v.**

**EOG RESOURCES, INC., a foreign corporation, Defendant and Appellant.**

**No. 20120349.**

Supreme Court of North Dakota.

June 19, 2013.

Charles L. Neff, Williston, ND, for appellee.

Michael D. Schoepf (argued), Amy Lynn De Kok (appeared) and Lawrence Bender (on brief), Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1]  EOG Resources, Inc., appeals a district court judgment granting Lario Oil & Gas Co.'s motion for summary judgment and quieting title of an oil and gas leasehold estate in Lario's favor.  We reverse

and remand, concluding the district court erred by deciding EOG did not lease the rights to the oil and gas interests.

I

[¶ 2] In 2004, several landowners executed oil and gas leases covering their interests in land adjacent to White Lake in Mountrail County, North Dakota, to Contex Energy Company. Contex assigned the leases to EOG. At the time, White Lake apparently was considered a navigable waterway and therefore all rights, including mineral rights, to land under the lake belonged to the State of North Dakota under the "equal footing" doctrine. *See Hild v. Johnson*, 2006 ND 217, ¶ 2, 723 N.W.2d 389. In 2005, an Assistant North Dakota Attorney General provided a Deputy Land Commissioner a memorandum suggesting White Lake was not navigable when North Dakota became a State.

[¶ 3] In 2008, Gene F. Lang & Co. executed oil and gas leases with the same riparian landowners who previously entered into leases with Contex. Lang assigned these leases to Lario. The Lang leases covered only the land beneath the bed of White Lake. In 2009, the State disclaimed ownership of the land beneath White Lake, including the minerals. EOG tendered bonus payments to the lessors for the additional acres, which were refused.

[¶ 4] Lario commenced this action against EOG in 2010, seeking a judgment declaring the Lario leases to be valid and enforceable and quieting title to the oil and gas interest in the lake bed to Lario. Lario moved for summary judgment, and EOG filed a cross-motion for summary judgment. The district court granted Lario's motion, concluding EOG's leases failed to specifically describe the "wet acreage" and quieting title to the oil and gas interest in the lake bed to Lario. EOG appeals, argu-

ing the lessors who entered into the 2004 leases intended to convey their entire interest in their respective properties, including their interests under the lake bed. EOG also argues the inclusion of "Mother Hubbard" clauses in the leases demonstrates the parties' intent to include all adjoining or contiguous land not specifically described. A common definition of a "Mother Hubbard" clause is "[a] provision in an oil-and-gas lease protecting the lessee against errors in the description of the property by providing that the lease covers all the land owned by the lessor in the area." *Black's Law Dictionary* 1106 (9th ed.2009).

II

[¶ 5] Our standard for reviewing a summary judgment is well established:

"Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record."

*Brigham Oil and Gas, L.P. v. Lario Oil & Gas Co.*, 2011 ND 154, ¶ 13, 801 N.W.2d 677 (quotation omitted). Both parties

moved for summary judgment, and no genuine issues of fact exist. The sole dispute here stems from interpretation of two sets of leases. "The same general rules that govern interpretation of contractual agreements apply to oil and gas leases." *Irish Oil and Gas, Inc. v. Riemer*, 2011 ND 22, ¶ 11, 794 N.W.2d 715 (quotation omitted). "Interpretation of a contract is a question of law, and on appeal this Court independently examines and construes the contract to determine if the district court erred in its interpretation." *Id.* "A contract must be read and considered in its entirety so that all of its provision[s] are taken into consideration to determine the true intent of the parties." *Id.* (quotation omitted). "Words in a contract are construed in their ordinary and popular sense." *Id.* (quotation omitted).

### III

[¶ 6] EOG argues its 2004 leases with the riparian landowners included the acres under White Lake, described by the parties as the "wet acres." EOG claims title should be quieted in its favor because the EOG leases were entered into before the Lang leases. Lario argues the district court correctly concluded the 2004 leases did not specifically describe the wet acres and the district court correctly quieted title of the oil and gas interests in the "wet acres" to Lario based on the 2008 leases.

[¶ 7] Each 2004 lease expressly described each lessor's respective interest in Lot 3 of Section 30 and in Lots 2 and 3 of Section 31, Township 157 North, Range 91 West. The quantity of acres written next to the legal description describes the total amount of "dry acres" only. EOG argues that while the acreage designation is incorrect, it should not be read to limit the EOG leases to only the "dry acres." EOG argues a specific description of property controls over an acreage designation. Therefore, the lessors conveyed their entire interest in their mineral rights when they leased their respective rights in the lots adjacent to and beneath White Lake. We agree.

[¶ 8] "When there is a discrepancy in a deed between the specific description of the property conveyed and an expression of the quantity conveyed, the specific description is controlling." *Hild v. Johnson*, 2006 ND 217, ¶ 13, 723 N.W.2d 389. There, Joe Hild acquired title to Section 21, Township 139 North, Range 102 West. *Id.* at ¶ 3. The deed described the land conveyed as all of Section 21, "containing 582.76 acres, more or less." *Id.* The 582.76 acres represented all of the land in Section 21, minus the 57.24 acres under the river. *Id.* Joe Hild conveyed an undivided 382.76/582.76 interest in the oil, gas and minerals in all of Section 21 to the Hardings. *Id.* The mineral deed described Section 21 as containing "582.76 acres, more or less." *Id.* In 1992, the United States Court of Appeals for the Eighth Circuit upheld a federal district court finding that the Little Missouri River was not navigable at the time of statehood and the State did not own the land or mineral rights beneath the river. *Id.* at ¶ 4.

[¶ 9] In 2000, Joe Hild conveyed his remaining mineral interest in Section 21 to the Hilds. *Hild*, 2006 ND 217, ¶ 5, 723 N.W.2d 389. The Hardings' mineral interest in Section 21 passed to Johnson. *Id.* The Hilds brought a quiet title action against Johnson, claiming ownership of all the mineral interests under the river. *Id.* The district court determined the 1960 mineral deed from Joe Hild to the Hardings conveyed a fractional interest in the minerals in all of Section 21, including the portion underlying the river. *Id.* On appeal, the Hilds argued the district court failed to give effect to the description of

the tract of land containing "582.76 acres, more or less." *Id.* at ¶ 7.

[¶ 10] We disagreed, explaining, "A statement in a deed of the quantity of land conveyed may be considered only if all other elements of description in the deed are ambiguous or uncertain." *Hild,* 2006 ND 217, ¶ 16, 723 N.W.2d 389. The description of the land was clear because the deed provided the full legal description of the particular section in its township and range. *Id.* Thus, "the particular description of the land controls over the recitation that the land contains a certain number of acres 'more or less.' " *Id.*

[¶ 11] As in *Hild,* the leases here contain a specific legal description of the land leased. Although *Hild* interpreted a deed and not a lease, we interpret grants of property "in like manner with contracts." N.D.C.C. § 47–09–11. Therefore, the same reasoning applies to our interpretation of the lease. The designated acreage in an otherwise unambiguous lease is irrelevant in light of the specific description. *Hild,* 2006 ND 217, ¶ 13, 723 N.W.2d 389. The lessors transferred to EOG their mineral rights in their respective interests in Lot 3 of Section 30 and Lots 2 and 3 of Section 31, including the "wet acres," notwithstanding the acreage designation. Therefore, the district court erred by granting Lario's motion for summary judgment. We reverse, holding EOG possessed the superior leasehold interest in the "wet acres" and title should have been quieted in EOG. Because we conclude the leases included the "wet acres," we do not reach the issue of what effect, if any, the "Mother Hubbard" clauses had.

## IV

[¶ 12] We reverse the judgment of the district court and remand for entry of judgment quieting title in EOG.

[¶ 13] MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 14] I agree this case is governed by our decision in *Hild v. Johnson,* 2006 ND 217, 723 N.W.2d 389. However, it is clear to me on the facts of this case as found by the trial court that neither the landowners who executed the original lease nor Contex Energy Company, the original lessee, intended to include the mineral acres under White Lake in the lease. As the majority opinion notes, not only did the notation on the leases describe only the "dry acres" and not the acres under the lake, the bonus payments for those acres under the lake were not paid at the time of execution of the lease. EOG only offered to make those payments some five years after the execution of the lease when the State disclaimed ownership of the land beneath the lake.

[¶ 15] Nevertheless, by operation of law the mineral acres under the lake are subsequently determined to be included in the lease at the time the State disclaimed ownership, thus rendering the actual intent of the original parties to the lease immaterial. This concept is captured by the decision in *Hild* when we cited with approval authorities from other jurisdictions and treatises holding that where an instrument conveys all of the tract, the significance of the conveyance is that the grantor "intended" to convey all the land in the tract, whatever its acreage and that "intent" is not abrogated by a difference between the description of the tract and the number of acres recited in the conveyance. *Hild,* 2006 ND 217, ¶¶ 13–15, 723 N.W.2d 389.

[¶ 16] In *Hild* we also cited with approval North Dakota Mineral Title Standards (1989), Standard 3–02, which, at

least as to the grant of an undivided mineral interest, provides that the grantee of an undivided mineral interest acquires the mineral acres in the conveyance "but such interest is limited to the extent the grantor has title to such lands." *Hild,* at ¶ 10. This provision apparently protects the grantor of an undivided interest from breach of warranty of title where the grantor does not own all the mineral acres in which the lease purports to convey an interest. It is not clear to me that the same rule applies where the lease, as we construe it, purports to convey the interest in all the mineral acres but it is determined that the lessor does not own all the mineral acres.

[¶ 17] If this decision were truly based on the actual intent of the parties as contrasted with the intent ascribed to the parties by the law, I would affirm the trial court. However, as I note above, it is the intent ascribed to the actions of the parties by the law that is controlling in these circumstances. There are instances in which the need for certainty in titles and the resulting expedience for the title examiner take precedence over the actual intent of the parties. This is such an instance.

[¶ 18] Gerald W. VandeWalle, C.J.