2014 ND 227

**Dan and Leanne ABELMANN,
Plaintiffs and Appellants**

v.

**SMARTLEASE USA, L.L.C., Defendant
and Appellee.**

No. 20130349.

Supreme Court of North Dakota.

Dec. 18, 2014.

Scott G. Harris (argued), Minneapolis, MN and Dante E. Tomassoni (appeared), Bismarck, ND, for plaintiffs and appellants.

Kent A. Reierson (argued), Williston, ND and Paul J. Forster (appeared), Bismarck, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1]  Dan and Leanne Abelmann appeal from a judgment dismissing their eviction action against SmartLease USA, L.L.C. The Abelmanns argue the district court erred as a matter of law in construing their written lease with SmartLease and in determining any breaches of the lease by SmartLease were immaterial and of nonessential terms. We reverse and remand, concluding the district court erred in interpreting the purpose of the parties' lease and failed to make adequate findings to understand the basis for its decision.

I

[¶ 2]  SmartLease is a limited liability company with three principals, Kent Guthrie, Tony Marshall, and Steve Furst, which described itself in a business proposal as an entity seeking "to capitalize on the demand for quality housing [in the Williston Basin] by providing a high quality, exceptionally clean and professionally managed RV/mobile park" in partnership with a landowner.  The Abelmanns own farmland in the Williston Basin in McKenzie County.

[¶ 3]  On December 18, 2011, the Abelmanns executed a written agreement to lease approximately 110 acres of their farmland to SmartLease for the stated purpose of "use as a short/long term RV (recreational vehicle), mobile home, cabin units, and truck parking."  Under the lease, SmartLease agreed "to use and occupy the Demised Premises for the purposes of operating a high quality, clean and professionally managed RV/mobile home/cabin park, truck parking and supporting services."  The lease initially au-

thorized SmartLease to lease the Abelmanns' land from November 1, 2011, through October 30, 2016, and granted SmartLease an option to renew for successive 3 year terms for up to 39 years. On November 10, 2012, the parties executed a written addendum to the lease, which extended the lease renewal term for up to 99 years and granted SmartLease a three-year option to buy some or all of the land for $20,000 per acre.

[¶ 4] Under the lease, SmartLease agreed to pay the Abelmanns monthly rent consisting of fixed fees for each housing lot and truck parking space rented in the RV park and to pay a $25 monthly damage deposit for every housing unit rented in the RV park until the amount of $50,000 was paid. The lease described the parties' obligations:

Section 1. *[SmartLease's] Obligations.* [SmartLease] agrees to take good care of the Demised Premises and make as and when needed all repairs or replacements as necessary in and about the Demised Premises. [SmartLease] shall, at its sole expense, construct and maintain in good condition and repair all necessary structures/improvements, roads, sewer, sewer treatment systems, water, well(s), gas and electrical distribution systems and facilities that are now in or are to be installed by [SmartLease] on the Demised Premises and that are destroyed and/or damaged in any way by [SmartLease]. Should [SmartLease] fail to keep the Demised Premises in a good and orderly repair, the [Abelmanns] may perform such repairs which become necessary in and about the Demised Premises and add the costs of such repair to the rent due hereunder for the monthly period following the date of repairs. Such portion of the cost of the repairs shall constitute a part of the rent provided for herein.

Section 2. *[The Abelmanns'] Obligations.* The [Abelmanns] agree[ ] to allow use of well to service the first 50 units of the park. Additional units to be serviced by County Road 17 access and well(s) constructed at [SmartLease's] expense. [The Abelmanns] own[ ] a scoria/gravel quarry/pit approximately 3.5 miles east on county road 17, then north 3.4 miles from the Demised Premises. [The Abelmanns] to provide [SmartLease] material from said quarry, and right to barter material, at no charge to [SmartLease], for the development of the Demised Premises. [The Abelmanns] will retain ownership of scoria/gravel on the Demised Premises. [The Abelmanns] to allow [SmartLease] the right to process additional scoria/gravel material from said quarry/pit, to include both parallel ridges from the existing pit south through the top of the hill, for sale to 3rd parties during the term of this lease. [The Abelmanns] agree[ ] to a 50/50 split of net profit with [SmartLease] of sales to 3rd parties. [The Abelmanns] to allow [SmartLease] use of any future rural water rights.

Section 3. This Lease is contingent upon [SmartLease's] ability to obtain financing and permits.

[¶ 5] The lease required SmartLease to obtain public liability insurance naming the Abelmanns as an additional insured for its operations on the land during the entire term of the lease. The lease authorized SmartLease to construct a sewage treatment system on the premises, and SmartLease agreed to pay for all heat, gas, power, electricity, and utilities furnished to the premises during the term of the lease. The lease granted SmartLease peaceable and quiet enjoyment of the premises free from eviction if SmartLease paid the rent and other charges provided under the lease and otherwise fully and punctually

performed the terms and conditions of the lease. The lease stated it represented the entire agreement between the parties with no other oral or collateral agreements or understandings between the parties.

[¶ 6] In April 2012, the Abelmanns and the three principals of SmartLease executed an agreement to form Ranger Rock, L.L.C., to mine all gravel, clay, and dirt in the quarry in or near the Abelmanns' existing gravel pit and to stockpile "rubble" brought to that site. The agreement authorized Ranger Rock to provide SmartLease material from the gravel pit at no charge for the development of SmartLease's "existing project." Under that agreement, the Abelmanns received 56 percent of Ranger Rock's income from the gravel pit and the other three members of Ranger Rock received 44 percent of the income.

[¶ 7] According to the Abelmanns, SmartLease agreed to develop the leased land into a high quality, clean, and professionally managed full service RV and mobile home park for housing and accommodations for the labor force in northwestern North Dakota. They claimed SmartLease started to develop the land, but thereafter neglected its obligations under the written lease. They asserted SmartLease failed to pay them rent or the security deposits required by the lease and failed to provide proper management for the land. According to them, a property manager hired by SmartLease, Aaron Smith, failed to provide proper on-sight management for the property and eventually quit, which resulted in no on-site management for the property. They claimed SmartLease asked Leanne Abelmann to collect rent from tenants while SmartLease sorted out the management problems. They also asserted SmartLease failed to: (1) maintain roads for the property; (2) install and maintain appropriate sewage facilities; (3) install appropriate electrical service for the property; (4) maintain portable toilets; (5) maintain proper signage for the RV park; (6) obtain financing to properly develop the property; (7) obtain proper insurance; and (8) professionally manage and develop the property. They asserted they provided SmartLease with written notice of termination of the lease in February 2013, and claimed SmartLease refused to vacate the premises and attempted to transfer the lease to a third party.

[¶ 8] According to SmartLease, it never anticipated the RV park would become fully operational immediately and it diligently developed the property from farmland into an RV park, including investing more than $500,000 in the project, having the land rezoned from agricultural to residential use, generating income from camper and truck parking by February 2012, and arranging for sewage and water facilities on the land. SmartLease claimed Furst lived with the Abelmanns while he managed the property from the fall of 2011 until he became sick in September 2012, and Aaron Smith then managed the property until he quit working for SmartLease in January 2013. SmartLease asserted it had Leanne Abelmann assume management of the property after Aaron Smith quit in January 2013. SmartLease claimed it was current on its rent payments to the Abelmanns until Leanne Abelmann began collecting rent from the tenants and SmartLease asserted its efforts generated substantial income for the Abelmanns, including more than $43,000 in rent from the RV park and more than $270,000 in gravel sales. SmartLease asserted its efforts resulted in an offer to purchase the land in January 2013 for nearly 5 million dollars. SmartLease also claimed the Abelmanns attempted to terminate the lease only after learning the property, which was subject to Smart-

Lease's option to purchase for $20,000 per acre, had substantially increased in value.

[¶ 9] In May 2013, the Abelmanns served SmartLease with a notice of intention to evict under N.D.C.C. ch. 47–32 and a subsequent complaint, alleging Smart-Lease failed to pay rent within three days after it was due and breached other material provisions of the lease. The Abelmanns complaint alleged SmartLease had not professionally managed the RV park as required under the lease, had not paid the Abelmanns the required rent or damage deposits, had not procured proper financing or insurance for the land, had not maintained a high quality, clean RV park, and had allowed the overall condition of the park to deteriorate.

[¶ 10] After an evidentiary hearing, the district court denied the Abelmanns' request for eviction, ruling:

After reviewing the evidence and post trial briefs I am not persuaded by the [Abelmanns] that there has been a material breach of the lease justifying eviction. The facts show that any non-compliance by Smart Lease has been minor and of non-essential terms. The essence of the lease was for Smart Lease to develop the property so it would generate income for the Abelmanns. Smart Lease has invested in excess of $500,000 in the property to do so. It has spent substantial time and effort turning it from a hayfield/pasture into a commercial venture with significant value under which the Abelmanns have been paid in excess of $300,000 pursuant to the lease. Abelmanns have only made the claim for termination after Smart Lease's money, labor and effort have borne fruits worth potentially millions of dollars. If there has been a breach that has cost the Abelmann's [sic] any losses they can assert such losses in an action upon the contract.

II

[¶ 11] The Abelmanns argue the district court erred as a matter of law in disregarding the lease's plainly stated purpose to operate a high quality, clean, and professionally managed RV park and in determining that any breaches by Smart-Lease were immaterial and of non-essential terms. They argue SmartLease failed to pay rent and to provide for a professionally managed RV park and the court erred in determining SmartLease did not materially breach the lease. SmartLease responds that, viewing the evidence in the light most favorable to the district court's decision, SmartLease's noncompliance with the lease, if any, was minor and of non-essential terms. SmartLease argues it substantially performed under the lease and the Abelmanns' complaints were a pretense for eviction after they learned the property had appreciated in value.

[¶ 12] In 2009, the statutory provisions pertaining to an eviction action were recodified from N.D.C.C. ch. 33–06 to N.D.C.C. ch. 47–32 without substantial changes. *Gasic v. Bosworth*, 2014 ND 85, ¶ 6, 845 N.W.2d 306. Under N.D.C.C. §§ 47–32–01(4) and (8), an eviction action to recover the possession of real estate may be brought when "[a] lessee . . . fails to pay rent for three days after the rent is due," or "[t]he lessee violates a material term of the written lease agreement between the lessor and lessee." An eviction action is limited in nature and "cannot be brought in a district court in connection with any other action, except for rents and profits accrued or for damages arising by reason of the defendant's possession." N.D.C.C. § 47–32–04. "No counterclaim can be interposed in such action, except as a setoff to a demand made for damages or for rents and profits." *Id.* This Court has recognized that in an eviction action, a

defendant may show the character of the possessory right claimed by the parties, including evidence of a strained relationship between the parties, but the right to possession of the land is the only fact that can be rightfully litigated unless damages or rent is claimed. *VND, LLC v. Leevers Foods, Inc.*, 2003 ND 198, ¶¶ 12–13, 672 N.W.2d 445.

[¶ 13] "Leases are subject to the rules of contract construction." *VND*, 2003 ND 198, ¶ 34, 672 N.W.2d 445. If the parties' intent can be ascertained from the language of the contract alone, the interpretation of the contract to determine its legal effect is a question of law. *Id.* The object of interpreting a contract is to give effect to the parties' mutual intention when the contract was executed. N.D.C.C. § 9–07–03. In interpreting a written contract, a court must first ascertain the intention of the parties from the writing alone, if possible. N.D.C.C. § 9–07–04. "A contract must be read and considered in its entirety so that all of its provision[s] are taken into consideration to determine the true intent of the parties." *Lario Oil & Gas Co. v. EOG Resources, Inc.*, 2013 ND 98, ¶ 5, 832 N.W.2d 49. "Words in a contract are construed in their ordinary and popular sense." *Id.* On appeal this Court independently examines and construes a contract to determine if the district court erred in its interpretation. *Id.*

[¶ 14] Here, the district court's terse decision stated it was "not persuaded ... there has been a material breach of the lease justifying eviction" and "any noncompliance by Smart Lease has been minor and of non-essential terms." The court explained the "essence of the lease was for Smart Lease to develop the property so it would generate income for the Abelmanns," and SmartLease had invested in excess of $500,000 in the property and its efforts had resulted in "a commercial venture with significant value under which the Abelmanns have been paid in excess of $300,000 pursuant to the lease." However, the plain language of the written lease explicitly stated the Abelmanns leased their property to SmartLease for the stated purpose of "use as a short/long term RV (recreational vehicle), mobile home, cabin units, and truck parking" and required SmartLease "to use and occupy the Demised Premises for the purposes of operating a high quality, clean and professionally managed RV/mobile home/cabin park, truck parking and supporting services."

[¶ 15] The court's decision ostensibly focused on whether income was being generated from the parties' commercial relationship and disregarded the plain language of the lease describing its stated purpose. All commercial business contracts or leases may inevitably be meant to procure a profit, but the plain language of this lease explicitly stated its purpose was to use the land for "short/long term RV (recreational vehicle), mobile home, cabin units, and truck parking" for "the purposes of operating a high quality, clean and professionally managed" RV park. We conclude the explicitly stated purpose of the parties' lease involved more than making a profit, as evident from the plain language of the lease. Moreover, to the extent the district court found the Abelmanns had received "in excess of $300,000 pursuant to the lease," the court did not make any specific findings identifying the source of those payments. Rather, the court essentially relied on payments from gravel sales to third parties from the Abelmanns' nearby quarry, which was referred to in the parties' December 2011 written lease but also involved the April 2012 agreement creating Ranger Rock. Under the lease agreement, SmartLease did not have an exclusive right to sell materials

from the gravel pit, and income from gravel sales to third parties did not vitiate the development of the leased property into a high quality, clean and professionally managed RV park. We conclude the generation of income under the Ranger Rock operating agreement did not alleviate any potential breaches of material provisions of the lease, including using the premises to provide a high quality, clean and professionally managed RV park. We conclude the district court erred as a matter of law in interpreting the purpose of the parties' lease, and the issue in this eviction action is whether SmartLease failed to pay rent for three days after the rent was due, or violated material terms of the written lease agreement.

[¶ 16] In *VND*, 2003 ND 198, ¶¶ 14–52, 672 N.W.2d 445, this Court reviewed a district court's decision denying eviction in a case involving a lessor's claim that a lessee failed to pay "additional rents" and also materially breached the lease by failing to pay pro-rata insurance premiums under the lease. We explained the court's decision and findings in that case were sufficient to understand the factual basis for its determination that rents were paid and there was no material breach of the lease. *Id.* at ¶¶ 27, 52. In discussing whether the lessee violated a material term of the written lease, we explained:

"[W]hether there has been substantial performance of a contract is a question of fact. The question of whether a lease has been fully complied with should also be treated as a finding of fact because the rules of construction relating to contracts generally apply to the construction of leases." *Kolling v. Goodyear Tire and Rubber Co.*, 272 N.W.2d 54, 60 (N.D.1978).

Whether a contract should be canceled for breach depends upon the facts of each case. *Sandberg v. Smith*, 234 N.W.2d 917, 919 (N.D.1975); *see also Hutton v. Janz*, 387 N.W.2d 494, 498 (N.D.1986). "A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made." *Schmidt v. Schmidt*, 2003 ND 55, ¶ 14, 660 N.W.2d 196.

*VND*, at ¶¶ 31–32.

[¶ 17] The district court did not make any specific findings regarding the Abelmanns' asserted claims about rent or other material breaches, but conclusorily stated there was no "material breach of the lease justifying eviction," and the "facts show that any non-compliance by Smart Lease has been minor and of non-essential terms."

[¶ 18] Rule 52(a), N.D.R.Civ. P., applies to eviction actions. *See Nelson v. Johnson*, 2010 ND 23, ¶¶ 31–32, 778 N.W.2d 773. Rule 52(a)(1), N.D.R.Civ.P., requires that in an action tried on the facts without a jury, "the court must find the facts specially." "The purpose of the rule is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for its conclusions of law and judgment." *Sorenson v. Slater*, 2010 ND 146, ¶ 10, 786 N.W.2d 739. This Court has explained that conclusory, general findings do not satisfy the requirements of N.D.R.Civ.P. 52(a), and a district court errs as a matter of law when it does not make required findings to adequately understand the basis of its decision:

"Conclusory, general findings do not comply with N.D.R.Civ.P. 52(a), and a finding of fact that merely states a party has failed in [or has sustained] its burden of proof is inadequate under the rule." *Rothberg v. Rothberg*, 2006 ND 65, ¶ 14, 711 N.W.2d 219. The court

must specifically state the facts upon which its ultimate conclusion is based on. *Id.* The purpose of the rule is to "provide the appellate court with an understanding of the factual issues and the basis of the district court's decision." *Clark v. Clark,* 2005 ND 176, ¶ 8, 704 N.W.2d 847. Because this Court defers to a district court's choice between two permissible views of the evidence and the district court decides issues of credibility, *see Stanhope v. Phillips–Stanhope,* 2008 ND 61, ¶ 10, 747 N.W.2d 79, detailed findings are particularly important when there is conflicting or disputed evidence. This Court cannot review a district court's decision when the court does not provide any indication of the evidentiary and theoretical basis for its decision because we are left to speculate what evidence was considered and whether the law was properly applied. *See Clark,* at ¶¶ 9 and 13. The court errs as a matter of law when it does not make the required findings. *L.C.V. v. D.E.G.,* 2005 ND 180, ¶ 11, 705 N.W.2d 257.

*In re R.A.S.,* 2008 ND 185, ¶ 8, 756 N.W.2d 771.

▇▇▇▇ [¶ 19] The district court's decision does not satisfy the requirements of N.D.R.Civ.P. 52(a). The court was presented with fact issues regarding multiple alleged breaches of the parties' lease. For example, the Abelmanns alleged Smart Lease failed to pay rent on time. Under N.D.C.C. § 47–32–01(4), a lessee who fails to pay rent for three days after the rent is due is subject to eviction. The district court made no specific findings on this issue and did not explain whether it simply found there had not been a failure to pay rent when due or whether it considered timely payment of rent a "minor" or "non-essential term."

[¶ 20] The court also determined the "essence" of the lease was for Smart-Lease to develop the property and generate income for the Abelmanns. That determination, whether a finding of fact or a conclusion of law, ignores the clear and unambiguous provisions in the written lease spelling out the purpose and intent of the parties that Smart Lease was required to operate a high. quality, clean, and professionally managed RV park. The Abelmanns presented evidence about several other claimed material breaches of that lease term. The district court disposed of those arguments and all of the conflicting evidence with its conclusory finding that any breach was minor and of non-essential terms, and that SmartLease had generated significant profits for the Abelmanns pursuant to the lease.

[¶ 21] The district court's findings are insufficient to allow us to adequately understand its decision. The court broadly stated "any non-compliance by Smart Lease has been minor and of non-essential terms." The court's findings do not identify any of the Abelmanns' claimed breaches by SmartLease, if they were actual breaches, or whether they were material. The court did not make any findings in relation to the Abelmanns' claim that rent was unpaid, which would serve as a sole ground for eviction under N.D.C.C. § 47–32–01(4). We conclude the district court did not make sufficient findings of fact under N.D.R.Civ.P. 52(a) and its findings are inadequate to permit appellate review.

### III

[¶ 22] We reverse the district court judgment dismissing the Abelmanns' eviction action and remand for adequate findings on whether SmartLease failed to pay rent for three days after the rent was due, or violated a material term. of the written lease agreement.

[¶ 23] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.