Filed 7/1/15 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2015 ND 170

Darwin Savre, d/b/a Savre’s Heavy Truck

& Auto Repair, Plaintiff and Appellee

v.

Jose Santoyo, Defendant and Appellant

No. 20140358

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Norman G. Anderson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Ann E. Miller, P.O. Box 10247, Fargo, N.D. 58106-0247, for plaintiff and appellee.

Andrew D. Cook, P.O. Box 458, West Fargo, N.D. 58078-0458, for defendant and Appellant.

Savre v. Santoyo

No. 20140358

McEvers, Justice.

[¶1] 
Jose Santoyo appeals from a judgment awarding damages to Darwin Savre for overpayments under the parties’ lease and purchase option agreement and dismissing Santoyo’s counterclaim for damages to the leased property.  
We conclude the district court did not clearly err in finding that Santoyo had breached the agreement and that Santoyo had waived strict compliance with the option agreement’s terms when he accepted Savre’s late lease payments.  We further conclude that the court failed to make sufficient findings of fact to explain dismissal of Santoyo’s counterclaim for damages.  We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2] Savre owns and operates Savre’s Heavy Truck & Auto Repair, an auto repair business in Fargo.  Santoyo owns the two parcels of real property and building that are the subject of the leases and option agreement in this case.  In June 2008, Savre and Santoyo entered into a lease agreement for a portion of the property including commercial building space.  The original lease term was from June 15, 2008, to June 15, 2010, with Savre paying rent of $2,300 per month until June 15, 2009, at which time the rent would increase to $2,708.33.   

[¶3] About the time of the rent increase, Savre and Santoyo entered into a “Lease to Purchase Option Agreement.”  Under this new agreement, Savre would lease Santoyo’s two parcels of property for a period of time, after which Savre could exercise the option to purchase the property if certain terms and conditions were met.  On July 15, 2009, Savre and Santoyo executed the option agreement which provided in part:

1.  OPTION TERM.  The option to purchase period commences either on April 1, 2013, and expires at 11:59 PM April 30th, 2013, or will commence at such time that [Savre] has made & been given receipt of not less than $180,000 in consideration toward the purchase of the subject property.

 

2.  NOTICE REQUIRED TO EXERCISE OPTION.  To exercise the Option to Purchase, [Savre] must give a minimum of 60 days notice, & deliver to [Santoyo] written notice of [Savre’s] intent to purchase.  In addition, the written notice must specify a valid closing date.  The closing date must occur before the original expiration date of the Lease Agreement, or the date of the expiration of the Option to Purchase Agreement designated in paragraph 1, whichever occurs later.

 

. . . .

 

4.  PURCHASE PRICE.  The total purchase price for the [Building] is $550,000.  Provided that [Savre] timely executes the option to purchase, is not in default of the Lease Agreement, & closes the conveyance of the [Building], [Santoyo] shall credit towards the purchase price at closing . . . the total sum of $4,000 for every monthly lease payment that [Savre] timely made, beginning from the date of the fully accepted Option to Purchase Agreement.  In addition to the lease payments; [Santoyo] will credit any additional payments or mutually agreed upon consideration that [Savre] may make from time to time throughout the duration of the lease(s) and/or this Option to Purchase contract. . . . [Savre] shall receive no credit at closing for any monthly lease payment that [Santoyo] received after the due date specified in the Lease Agreement(s).  
Receipts of additional payments, consideration & [Santoyo] allowed delinquent lease payments
 are to be kept & maintained by both parties and copies will be freely given to one another upon written request.

 

5.  EXCLUSIVITY OF OPTION.  This Option to Purchase Agreement is exclusive & non-assignable & exists solely for the benefit of the named parties above.  Should [Savre] attempt to assign, convey, delegate, or transfer this option to purchase without [Santoyo’s] express written permission, any such attempt shall be deemed null & void.

 

. . . .

 

8.  FINANCING DISCLAIMER.  The parties acknowledge that it is impossible to predict the availability of obtaining financing towards the purchase of this Property.  Obtaining financing shall not be held as a condition of performance of this Option to Purchase Agreement.  The parties further agree that this Option to Purchase Agreement is not entered into in reliance upon any representation or warranty made by either party.

 

9.  REMEDIES UPON DEFAULT.  If [Savre] defaults under this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to [Santoyo] at law or in equity, [Santoyo] may terminate this Option to Purchase by giving written notice of the termination.  If terminated, [Savre] shall lose entitlement to any refund of rent or option consideration.  For this Option to Purchase Agreement to be enforceable & effective, [Savre] must comply with all terms & conditions of the Lease Agreements.

 

. . . .

 

16.  ENTIRE AGREEMENT; MODIFICATION.  This document sets forth the entire agreement & understanding between the parties relating to the subject matter herein & supersedes all prior discussions between the parties.  No modification of or amendment to this Option to Purchase Agreement, nor any waiver of any rights under this Option to Purchase Agreement, will be effective unless in writing signed by the party to be charged.

 

The lease incorporated by the option agreement also provided:

18.  
DEFAULT.
  If [Savre] fails to pay the rent as agreed, or fails to fulfill any of the conditions herein contained, then [Santoyo] may, at [his] option, by written notice to [Savre], immediately declare this Agreement terminated and evict [Savre] in accordance with the laws of the State of North Dakota. . . .

 

(Emphasis added.)

[¶4] Although the lease and option agreement required Savre to pay his monthly rent payments on the first of each month, Savre was frequently late in his payments from the beginning of the lease.  Santoyo accepted the payments and did not give Savre written notice of any intent to terminate the lease based on Savre’s late payment.  Savre made monthly payments in varying amounts under the option agreement, and the district court found he paid at least a total of $4,000 each month.

[¶5] In the fall of 2012, Savre and another individual formed JDDS, LLC, intending to use the entity to finance the purchase of Santoyo’s property.  The district court found, however, that Savre did not attempt to assign, convey, delegate or transfer his purchase option to JDDS.  On December 21, 2012, Savre made his first attempt to exercise his option to purchase the property with a handwritten notice to Santoyo.  On February 27, 2013, Savre made a second attempt to exercise the option with another handwritten notice to Santoyo.  Santoyo did not respond to Savre’s attempts to exercise the purchase option.  The court found that at the time Savre attempted to exercise the option on February 27, 2013, Savre had paid at least $180,000 in monthly payments, satisfying the option agreement requirement of paying $180,000 toward the purchase of the property.  

[¶6] After Santoyo did not sell him the property, Savre stopped making monthly payments.  Santoyo initiated eviction proceedings against Savre in the district court.  The court granted the eviction and entered judgment against Savre for unpaid rent and Santoyo’s costs and disbursements.  Savre vacated Santoyo’s property at the end of June 2013 and began leasing a different space in Fargo.  Savre subsequently commenced this action, alleging that Santoyo breached the option agreement when he failed to sell the property leased to Savre after he exercised his option and that Santoyo had been unjustly enriched.  Santoyo denied the allegations and counterclaimed, alleging Savre violated his contractual and statutory duties by damaging the property upon being evicted from the premises.  

[¶7] After a bench trial, the district court found Santoyo had breached the option to purchase agreement and awarded Savre damages in the amount of $31,996, for  overpayments Savre made under the lease agreement.  The court denied Savre’s additional claimed damages for lost business profits and costs of moving into a new commercial building as speculative.  In dismissing Santoyo’s counterclaim for Savre’s alleged damages to the property, the court found Santoyo failed to meet his burden of proof.

II

[¶8] Our standard for reviewing an appeal after a bench trial is well-established:

In an appeal from a bench trial, the trial court’s findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a) and its conclusions of law are fully reviewable.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made.  In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations. 

 

Brash v. Gulleson
, 2013 ND 156, ¶ 7, 835 N.W.2d 798 (citations and quotation marks omitted).

III

[¶9] Santoyo argues the district court erred as a matter of law when the court concluded Santoyo had a contractual duty to sell his property to a third party that did not exist at the time of the agreement and had no rights under the agreement.

[¶10] The general rules for contract interpretation also apply to the interpretation of leases.  
See
 
Sterling Dev. Grp. Three, LLC v. Carlson
, 2015 ND 39, ¶ 13, 859 N.W.2d 414; 
Abelmann v. SmartLease USA, L.L.C.
, 2014 ND 227, ¶ 13, 856 N.W.2d 747.  When the parties’ intent can be ascertained from the contract language alone, the interpretation of the contract to decide its legal effect is a question of law.  
Abelmann
, ¶ 13.  The object of contract interpretation is to give effect to the parties’ mutual intention when the contract was executed.  N.D.C.C. § 9-07-03.  When the contract is written, the court must first ascertain the parties’ intention from the writing alone, if possible.  N.D.C.C. § 9-07-04.  “‘A contract must be read and considered in its entirety so that all of its provision[s] are taken into consideration to determine the true intent of the parties.’”  
Abelmann
, ¶ 13 (quoting 
Lario Oil & Gas Co. v. EOG Res., Inc.
, 2013 ND 98, ¶ 5, 832 N.W.2d 49).  “Words in a contract are construed in their ordinary and popular sense.”  
Lario
, at ¶ 5.  

[¶11] This Court on appeal will independently examine and construe a contract to decide whether the district court erred in its interpretation.  
Abelmann
, 2014 ND 227, ¶ 13, 856 N.W.2d 747.  Even when a lease provision creates an ambiguity, “[a] course of dealings and usage should be given effect in interpreting a contract ambiguity.”  
Mandan Educ. Ass’n v. Mandan Pub. Sch. Dist. No. 1
, 2000 ND 92, ¶ 9, 610 N.W.2d 64; 
see also
 N.D.C.C. § 9-07-20; 
Sterling
, 2015 ND 39, ¶ 13, 859 N.W.2d 414.  This Court has said that “[a] breach of contract occurs when there is nonperformance of a contractual duty when it is due.”  
Sanders v. Gravel Prods., Inc.
, 2008 ND 161, ¶ 7, 755 N.W.2d 826 (quotation marks omitted).  “Whether a party has breached a contract is a finding of fact that will not be reversed on appeal unless it is clearly erroneous.”  
Id.

[¶12] Santoyo contends the central issue is whether he can be liable for breaching the option agreement with Savre by not selling his property to a third-party entity that had no rights under the contract.  He argues that under the plain language of the option agreement, Santoyo did not have a contractual duty to sell his property to JDDS, and the court erred as a matter of law in deciding he had such a duty.  Santoyo asserts the agreement was only between Savre and him, JDDS was neither a named party nor referred to in the agreement, and JDDS did not exist at the time the contract was made.  He contends the option was exclusive to Savre, who was the only person who could exercise the option and purchase the property.  He contends the agreement under its terms was nonassignable and Savre could not assign his option to JDDS without Santoyo’s express written permission.

[¶13] Santoyo argues, alternatively, that the district court’s finding that Santoyo breached the option agreement is clearly erroneous.  He contends Savre and JDDS are separate legal entities and Santoyo could not have sold the property to JDDS, otherwise Santoyo would have breached the agreement.  He asserts Savre testified that he was not attempting to personally buy the property, conceding he did not have the money to pay off the $370,000 purchase price, and that JDDS was the only entity that had obtained financing.  Santoyo asserts a basic condition under the agreement for Savre to purchase the property was Savre had to pay for it and Savre testified JDDS had only been approved for $313,000 in financing.  Santoyo contends he did not breach the agreement by refusing to sell the property.  

[¶14] Savre responds that, despite the “exclusivity of option” provision, the district court correctly found Savre did not attempt to assign, convey, delegate or transfer his option.  Savre asserts he in fact exercised the option, rather than JDDS.  Savre further asserts that obtaining financing before he exercised the option was not required by the agreement, as shown by the “financing disclaimer” provision, which specifically states that obtaining financing would not be a condition of performance.

[¶15] Here, the district court specifically found that Savre, rather than JDDS, attempted to exercise the option in February 2013, after Savre had satisfied the contract’s requirement of paying at least $180,000 toward the purchase of the property.  The court found Santoyo did not respond in any way when Savre attempted to exercise the option in December 2012 and February 2013.  Contrary to Santoyo’s argument on appeal, the court found that Savre did not assign, convey, delegate or transfer his purchase option to JDDS.  

[¶16] Santoyo contends the district court erred as a matter of law and held he had a contractual duty to sell his property to JDDS.  We disagree with Santoyo’s contention, as he misstates the district court’s holding.  The court simply stated that “the formation of JDDS, LLC, and the intent to exercise the purchase option under this new company name, is not a valid reason to terminate the purchase option agreement.”  We construe the court’s language to mean that, in light of its earlier findings that Savre had personally attempted to exercise the option in his handwritten notice and had not attempted to assign the option, Savre’s formation of JDDS and “intent” to exercise the purchase option did not terminate the option.  Simply put, the option agreement was not violated merely by Savre’s intentions in forming JDDS, since Savre had not assigned the option and Santoyo failed to respond to Savre’s February 2013 notice.   

[¶17] Although Santoyo essentially argues that Savre attempted to exercise the option “through JDDS,” and the attempt was null and void, there is no documentary evidence showing Savre actually assigned his option to JDDS or that JDDS was the entity that exercised the option in February 2013.  Rather, the evidence shows Savre made the increased payments under the lease and had personally exercised the option by giving notice based on Savre’s handwritten notices in December 2012 and February 2013.  The handwritten notices met the requirements to exercise the option, by providing notice in writing of Savre’s intent to purchase the property and specified a proposed closing date prior to the expiration date of the term of the option.  The parties did not close on the property because Santoyo simply did not respond to Savre’s notice to exercise the option, not based on Savre’s failure to perform under the agreement.

[¶18] Santoyo’s contention regarding JDDS obtaining financing are not relevant to exercising the option, as the agreement specifically stated that “[o]btaining financing shall not be held as a condition of performance of this Option to Purchase Agreement.”  Regardless of how Savre intended to finance and subsequently hold the property after purchasing the property from Santoyo, we conclude the district court did not clearly err in finding Savre exercised the option and Santoyo in failing to respond, breached the option agreement.  We, therefore, conclude the court’s findings of fact are not clearly erroneous. 

IV 

[¶19] Santoyo argues the district court erred in finding that he waived strict compliance with the option agreement’s terms through his conduct when the agreement required any waiver to be in writing.

[¶20] Generally, a person who receives an option from another to purchase property “must strictly comply with the contractual requirements for exercising an option to purchase.”  
Prairieview Nursing Home v. N.D. Dep’t of Human Servs.
, 1999 ND 142, ¶ 15, 598 N.W.2d 116; 
see also
 
Fries v. Fries
, 470 N.W.2d 232, 234 (N.D. 1991).  Nonetheless, this Court has also explained that “[a] person may waive contractual rights and privileges to which that person is legally entitled.”  
Sanders
, 2008 ND 161, ¶ 10, 755 N.W.2d 826.  

Waiver is a voluntary and intentional relinquishment or abandonment of a known advantage, benefit, claim, privilege, or right.  Although waiver and estoppel are similar concepts, estoppel involves conduct by both parties and prejudice is one of its essential elements, while waiver depends upon what one party intended to do, regardless of the other party.  Estoppel arises apart from any intention on the part of the one estopped.  Although the existence or absence of waiver is generally a question of fact, the issue becomes a question of law if reasonable persons could draw only one conclusion from the circumstances.

 

Id.
 (citations and quotation marks omitted).

[¶21] A party to a contract can waive a provision that time is of the essence and may also waive option conditions in a contract.  
Sanders
, 2008 ND 161, ¶ 11, 755 N.W.2d  826.  “Waiver may be established either by an express agreement 
or by inference from acts or conduct
.”  
Pfeifle v. Tanabe
, 2000 ND 219, ¶ 18, 620 N.W.2d 167 (citing 
Hanson v. Cincinnati Life Ins. Co.
, 1997 ND 230, ¶ 13, 571 N.W.2d 363) (emphasis added).  “Waiver may be found from an unexplained delay in enforcing contractual rights or accepting performance different than called for by the contract.”  
Pfeifle v. Tanabe
, 2000 ND 219, ¶ 18, 620 N.W.2d 167; 
see also
 
Dangerfield v. Markel
, 252 N.W.2d 184, 191 (N.D. 1977).  As a noted treatise also explains, an option agreement’s requirement for timely payments may be waived under certain circumstances:

In option contracts, the time for exercise of the option is often of the essence.  The time may be extended by waiver or estoppel. . . .  Accepting a delayed payment of part or all of the amount then due, without any notice of intention to claim a forfeiture or a discharge, operates as a waiver of the existing default.

 

8 Catherine M.A. McCauliff, 
Corbin on Contracts
 § 40.3, at 525-28 (rev. ed. 1999)
.  Further, a party may waive a condition precedent despite the presence of non-waiver provision:

Parties to a contract cannot, even by an express provision in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement.  At common law, an express provision in a written contract that no rescission or variation is valid unless it too is in writing will not invalidate a subsequent oral agreement to the contrary.  Similarly, a provision that an express condition of a promise or promises in the contract cannot be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective.  The promisor still has the power to waive the condition, or to be estopped by conduct from insisting upon it, to the same extent that he would have had this power without that provision.

 

8 
Corbin on Contracts
, § 40.13, at 571.  Even when a contract contains a clause saying that any waiver or modification of the contract must be in writing, a party may waive a condition precedent by its actions or statements.  
See
 
Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre at Parole, LLC
, 25 A.3d 967, 983 (Md. 2011); 
see also
 8 
Corbin on Contracts
 § 40.13, at 571.  A condition precedent after a breach may be waived by a party by failing to assert its remedy for that breach.  
Id.
 at 984.  “A party’s inaction or silence is relevant, especially when that party is silent in response to the breach.”  
Id.
; 
see also
 
Tenneco, Inc. v. Enterprise Prods. Co.
, 925 S.W.2d 640, 643 (Tex. 1996) (“Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver.”). 

[¶22] Santoyo argues the district court ignored the option agreement’s plain language, as well as evidence at trial, when the court concluded Santoyo waived “strict compliance” with the option’s terms based on his acceptance of Savre’s late payments and his failure to give notice of his intent to terminate the lease.  Santoyo argues the agreement requires any waiver to be in writing and there was no evidence of a written waiver.  Santoyo asserts Savre conceded at trial that Santoyo had never given him authority to pay rent after the first of the month and the court failed to account for the provision in its conclusion.  Santoyo also contends Savre conceded at trial that he did not waive strict compliance with the agreement.  Santoyo argues that because Savre did not strictly perform the agreement by making timely payments, Savre did not accept the offer made though the option and Santoyo had no obligation to sell his property.

[¶23] Savre responds the district court correctly found Santoyo waived his right to declare Savre in default of the option agreement because of the late lease payments.  He contends the issue is whether Santoyo, having accepted Savre’s payments without notifying him at any time that he was in default, could use those late payments as a 
post hoc
 excuse from performing under the option agreement.  Savre asserts Santoyo undisputedly accepted the increased payment of $4,000 per month, which included rent and consideration for the option agreement, and because Santoyo did not give notice, Santoyo could not declare a forfeiture based on the default provision. 

[¶24] Here, the district court found that Santoyo had waived timely payments under the option agreement.  The district court also noted that Santoyo did not exercise the remedies available stating:  

Paragraph 9 of the lease agreement sets out the remedies available to Santoyo in the event Savre defaulted under the terms of the option.  It specifically gave Santoyo the remedy of terminating the option to purchase in case of default by simply giving Savre written notice of the termination.  Savre was late in monthly lease payments almost from the very beginning of the lease agreement, yet Santoyo never gave notice of intent to terminate the lease.  Nor did Santoyo respond in any way when Savre attempted to exercise the option to purchase on December 21, 2012, and February 27, 2013.  Moreover, Savre testified at trial that as late as August 2012 Santoyo wanted Savre to purchase the property, a clear indication Santoyo did not view the late payments as an obstacle to Savre purchasing the property under the option.

 

There is no dispute that Savre made the increased monthly payments under the lease and option agreement and that Santoyo did not notify Savre in writing that Savre was in default before Santoyo failed to perform under the option agreement
.  The evidence shows that Santoyo accepted late monthly payments and that Savre attempted to exercise the purchase option believing he had made sufficient payments under the agreement.  The evidence also shows that Santoyo did nothing to exercise his remedies prior to Savre’s attempt to exercise the option.

[¶25] Based on our review of the record, we conclude the district court’s finding that Santoyo had waived strict compliance with the option agreement terms, including the requirement of waiver to be in writing, regarding Savre’s rent payments was not clearly erroneous.

V

[¶26] Santoyo argues the district court failed to make sufficient findings in dismissing his counterclaim for alleged damages to the property by Savre after Savre was evicted from the premises.  

[¶27] Rule 52(a)(1), N.D.R.Civ.P., specifically requires that in an action tried on the facts without a jury, “the court must find the facts specially and state its conclusions of law separately.”  “The purpose of the rule is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for its conclusions of law and judgment.”  
Sorenson v. Slater
, 2010 ND 146, ¶ 10, 786 N.W.2d 739 (quotation marks omitted).  This Court has said that “conclusory, general findings do not satisfy the requirements of N.D.R.Civ.P. 52(a), and a district court errs as a matter of law when it does not make required findings [for us] to adequately understand the basis of its decision.”  
Abelmann
, 2014 ND 227, ¶ 18, 856 N.W.2d 747. 

[¶28] Santoyo testified regarding the alleged damage Savre left upon his eviction from the property.  Santoyo testified that Savre left large piles of dirt, gravel, and wood on the lot, which had to be removed, and that Savre had removed metal panels from the building’s wall, damaged the sinks and walls with oil, left large bolts protruding from the floor after removing a hoist, and had dismantled a heater.  Santoyo asserts his evidence at trial included numerous photographs of the damage.  He asserts there are no findings on any of his claimed items of damage, and the court has not provided any meaningful explanation why the damages were speculative or not credible.  Santoyo also contends Savre admitted to several items of the damage at trial and failed to rebut or deny Santoyo’s testimony.  

[¶29] Savre responds, however, that Santoyo simply failed to present sufficient exhibits or otherwise corroborate his testimony regarding the damages he allegedly suffered when Savre vacated the property.  He asserts that the property damage evidence was controverted by testimony and documentary evidence submitted by Savre and that the court’s dearth of findings is attributable solely to Santoyo’s complete failure of proof.  

[¶30] Here, after concluding Savre’s claim for damages for lost business profits and the costs of moving into a new commercial building were “little more than speculation,” the district court provided only two sentences in dismissing Santoyo’s counterclaim for alleged damages to his property.  The court in addressing Santoyo’s counterclaim merely stated, “The same is true for the damages Santoyo claimed.  In addition, the Court does not find the testimony offered by Santoyo in support of the claim for damages to be credible.”  

[¶31] We conclude the district court’s findings of fact dismissing the counterclaim do not sufficiently address Santoyo’s counterclaim, in light of evidence that Santoyo presented at trial and because Savre does not appear to dispute at least some of the damages.  We are unable to understand the factual basis for the district court’s decision.  We reverse the court’s dismissal of Santoyo’s counterclaim and remand to the district court for additional findings to explain its decision.   

VI

[¶32] The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings.

[¶33] Lisa Fair McEvers

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.